# Limerick and Colebrookedale Turnpike Company's Appeal.

On an ancient road there had been three drains into adjoining land; a turnpike was located on the road, and the land afterwards divided into town lots; two of the drains were permitted to be closed. *Held*, 1. That the company had not the right to turn all the water through the other drain on to the adjoining lot owner's land; 2. That the lot owner had the right to protect himself from the excessive flow by obstructing it, although the turnpike would thereby be injured.

January 24th 1876.　　Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Court of Common Pleas of *Montgomery county*: In Equity: Of January Term 1876, No. 81.

To May Term 1873 of the court below, the Limerick and Colebrookedale Turnpike Company brought a bill against Frederick Dellicker, alleging:—

1. Their incorporation on the 15th of March 1847, to make a turnpike in Montgomery and Berks counties.

2. They constructed their road, in conformity with their charter, and had continued to maintain and take tolls, &c.

3. The road passed through the village of Gilbertsville, and a lot of defendant in that village was situate on the side of the road.

4. From the time the road was made there had been a drain to carry the water from it through defendant's lot. Defendant had lately obstructed the drain. The obstruction having been removed by the plaintiffs, defendant had again obstructed it, and continued to maintain the obstruction, causing the water to flow back on the road, injuring the road and impeding the travel.

5. The road, where it passed through Gilbertsville and along the front of defendant's lot, was made on the bed of an ancient public highway, and the water which collected on the highway was, for more than thirty years before making the turnpike, drained from the highway by the same drain as that obstructed by the defendant.

6. The plaintiffs' charter authorized them to occupy the highway for the bed of their turnpike, and provided that plaintiffs should "for ever maintain the same in perfect order and repair."

7. Defendant refused to remove or permit the obstruction to be removed, and threatened to maintain it indefinitely.

8. The drain was the natural and necessary outlet for water which collected on that part of the turnpike, and it could not be kept in perfect order and repair whilst the obstruction was maintained.

The prayer was that the defendant be restrained from obstructing the drain and impeding the flow of water through his lot.

The defendant answered: that water from the turnpike in part had run over his property, but was divided between three or

[Limerick & Colebrookedale Turnpike Co.'s Appeal.]

four other properties and his. Some years since different persons built on their lots in Gilbertsville, and the plaintiffs, against his protest, turned all the rain-streams through his property. He closed the drain mentioned in the bill; the plaintiffs opened it; he again closed it, and intended to keep it closed until it should be determined otherwise by law. He denied that plaintiffs had no other way to relieve the road from water. He denied that the water which collected on the highway for thirty years before making the turnpike had been carried off through his property. He averred that there was no right to turn the water on his property, and that he never had more than a fair share of the water until the plaintiffs turned it on him as above stated. He denied the eighth paragraph of the bill.

Charles H. Stinson, Esq., was appointed examiner and master.

He reported : that in pursuance of their charter, the plaintiffs had laid their turnpike on a public highway called the "Swamp Road," under which had been a culvert for nearly thirty years, opposite defendant's lot, to carry the water running on the north-easterly side of the road to the opposite side, on which there were then no houses ; the land was used for farming, and the water falling on the road was carried on the land in three places, one being where the defendant's lot was, one above and one below, draining the road for a quarter of a mile. There was little difference in the fall between the places of the two lower drains. When the turnpike was located through Gilbertsville, no change was made in the culvert. The land was divided then into lots and a number of houses erected on the south-westerly side, and until within a few years the water was carried off as theretofore. A house was built near where the upper drain was, and the drain was shut up ; one was built near the lower drain, which was also closed. This drain, before it was closed, had received most of the water ; the water after that, all ran through the defendant's lot. He then closed the drain through him, and water either stood in front of his house, or, when sufficiently high, ran down the road and upon other grounds. The location of the turnpike over the old highway vacated it, and remitted the owners of the land to their original rights so far as to relieve them from the authority of the supervisors to make and maintain drains. The charter did not confer these rights on the plaintiffs. They had only the right which the superior owner had for the discharge of waters naturally falling upon the inferior ; and if the three drains were natural outlets, the plaintiffs had no right to make such obstruction as to cause the flow through defendant's land alone. The improvements along the road were allowed by the plaintiffs without their objection to change the course of drainage. They could not complain of the defendant's obstruction, without affording him means to relieve himself from the water which should not run on his lot.

[Limerick & Colebrookedale Turnpike Co.'s Appeal.]

The master further found that, by a small expenditure, the water could be conducted into a running stream at a short distance.

The master recommended that the bill should be dismissed.

The plaintiffs excepted to the report.  The court, Ross, P. J., confirmed the report and dismissed the bill.

The plaintiffs appealed to the Supreme Court, and assigned the decree of dismissal for error.

*G. R. Fox* (with whom was *J. Fornance*), for appellants.

*C. Hunsicker*, for appellee.

Judgment was entered in the Supreme Court, January 31st 1876,

PER CURIAM.—The defendant found himself subjected to a flow of water far beyond that which had theretofore usually flowed upon his premises from the turnpike road above.  He clearly had a right to protect his property from the utter destruction which threatened it, by damming off this extraordinary flood.  Whether this was caused by the unlawful acts of others by throwing the waters into a channel along the turnpike to his premises, or by the act of the company, his right to protect his property from this unusual flow was the same.  Therefore, under the prayers of the bill, and the findings of fact, we cannot say the court below erred in dismissing the bill.

Decree affirmed with costs and appeal dismissed.